ShaokeleORD, J.,
delivered the opinion of the 'Court.
This is a petition filed in the Common Law and Chancery Court at Memphis, for a. mandamus, by the relator, against' the defendant, as the Coroner of Shelby County.
It appears, from the petition, that relator was, with others, a candidate for County Judge, at the election held in the County of Shelby, on the first day of March, 1866, for county officers, under the general laws of the State; ■ that the relator received a plurality of the votes cast at the polls on that day. The defendant, as Coroner, received the returns of ■ the election; refused to count the votes cast for the office of County Judge, and give him a certificate of his election, and make proper returns to the Secretary of State, that he might receive his commission; and asks that the defendant be compelled to discharge his duty, as required- by law. His Honor, Judge Smith, refused the application, and dismissed the petition; from which an appeal was taken to this Court.
The question presented for our determination, is, is the office of County Judge, a county office? The Act creating the office, provides, the election of County Judge shall be held at the same time and places, by the same officers, that county elections are *3 Reid, on the first Saturday in March, 1858, and under the same rules and regulations that are prescribed for other county elections. All subsequent elections, (except for vacancies, which shall he held whenever they occur, upon giving twenty days’ notice,) shall be held the first Saturday in March, every eight years thereafter. Sec. 3d of the Act provides, they shall be commissioned as other Judges, etc. etc. Sec. 4 abolishes the Quorum Court, in those Counties in which the office is created, and gives the Judges all the jurisdiction and authority exercised by the Chairman of the County Court: See ' Acts of 1858, chap. '38, page 46. For the proper construction and meaning of the Act, which creates the office, we must look to the previous Acts of the Legislature on this subject. At the session of the Legislature, 1855-6, (see Acts, page 511,) a County Judge was created for the several Counties in the State; he held his office for four years; all the elections, except the first, were directed to be holden at the same time and place as other County elections, under the same rules and regulations, except elections to fill vacancies. The office was established in place of the Quorum Court, to do the business of the County pertaining to that Court. The officer was allowed five dollars per day, and such other compensation as may be allowed by the Quarterly Court. This Act was repealed at the session of 1857-8, and at the same session, was, with slight modifications, re-enacted, for the Counties of Davidson, 'Shelby, Knox, Montgomery, and Williamson, which provides there should be elected a person, learned in *4 the law, for County Judge, who shall hold his office for the term of eight years, from the date of his commission. This provision was carried into the Code, sec. 316. On examining the provisions of the Act, originally creating the office, and those that were reenacted in the subsequent Acts referred to, organizing the County Courts, and those Acts defining the jurisdiction and powers of the County Judge, it will 'be seen this officer is vested with no higher jurisdiction than the Quorum Court, or the Chairman •elected by the Justices each- January. The Judge and -Chairman are both the fiscal agents of the county: See sec. of Code, 4217, and the several sections preceding. Every duty conferred on this officer, is that which -is conferred on the Chairman, or Quorum Court. Where there is a County Judge, he is elected, as other county -officers; is paid by the County Court. Upon the creation of this office, no new tribunal was established, or jurisdiction given the Court, it did not previously hold. By the Constitution, Article 7, and by the amendments adopted in 1853, see pages of the Code, 45 and 51, the Legislature is directed to appoint different times for the election of different officers; that is, one day for County officers, one day for Judges and Chancellors, and another for political officers. Under this plain mandate of the Constitution, the Legislature fixes the election as follows: By sec. 823 of the Code, Judges and Chancellors, on the 4th Thursday in May, counting from the 4th Thursday of that month, 1854, and every eight years thereafter. By sec. 824, the election of County Judges *5 is held as other county elections, on the first Saturday of March, 1858, and every eight years thereafter, except when vacancies occur, which shall be held upon giving twenty days’ notice. With this plain provision of the Constitution before the Legislature that established the office, and fixed the time of holding the elections, could they have placed any other character or meaning to this office, than that of a county office? The Quorum Court, or Chairman, already discharged, under the existing laws, the duties that were to be done by this officer. It cannot alter the meaning or intention of the Legislature, or. enlarge his power, that he is elected Judge; he would have been equally the officer of the Court, if he had been called the Chairman, or Chief Justice of the County. By article 6, sec. 1, of the Constitution, the judicial power of the State is vested in one Supreme Court, and in such inferior Courts as the Legislature may establish, and the Judges thereof; and in Justices of the Peace.”
By sec. 4th, it is ordained, that the Judges of such inferior Courts shall be thirty years of age, and shall be elected for the term of eight years. Sec. 9, of article 6, provides, “The Judges of the Supreme Court, and inferior Courts, shall, at stated times, receive a compensation for their services, to be ascertained by law, which shall not be increased or diminished, during the time for which they are elected; they shall not be allowed any fees, or perquisites of office, etc.” In the Act establishing the office, in 1855-6, in the several counties of the State, the law *6 is silent as regards their age; they are not prohibited from practicing law in the other Courts of the State, and were paid for their services five dollars per day, and such other compensation as the Quarterly Courts would make them. Thus their salaries could be increased or diminished, at the will of the Quarterly Court. ' They simply performed those duties that were previously discharged by the Quorum Court, or Chairman of the County. He cannot, therefore, be placed with that class of judicial officers, who are declared, by section of the Code, 3915, to be Judges of the State at large. This question came before this Court in the case of Ed. Moore vs. The State, 5 Sneed, 510. The Court say: “This Act is not in violation of that clause in the recent amendment of the Constitution, by which the election .of Judge is given to the people, which forbids the election to be held on the same day with the general elections. True, this Judge is to be elected on the same day with other county elections, but the Constitution had no reference to the election of county officers, no matter by what name called, in the provision made for the election of regular judicial officers of the State. In the creation of such a county office, the Legislature was free to prescribe the time 'for the election of the incumbent.” This decision is founded on reason and principle, and we indorse and approve it. It follows, therefore, that the office of County Judge is a county office, and the election was properly holden on the first Saturday of March, 1866, that being the time ' fixed by law, for the election of this officer, as provided in the Code, *7 sec. 824. The voters of the county have exercised the right guaranteed to them under the Constitution and laws of the State, of electing a person to fill the office. It was the duty of the Coroner to count the votes cast for the candidates for the office of County Judge, and give the person receiving the highest number, a certificate of the fact, and make due returns to the Secretary of State.. The petition averring the Coroner received the votes cast, and refused to count them, (there being no averment in the petition, the Sheriff was a candidate,) and the law providing where the Sheriff is a candidate, the Coroner shall hold the popular elections, we. will presume the election was legally holden, by the proper officers. These facts can be shown in his answer to the writ. He having failed to discharge his official duties as Coroner, acted in violation of law.
It is insisted the Judge of the Common Law and Chancery Court, at Memphis, had ' no jurisdiction of the case. Section 3569 of the Code/ provides, the Circuit Judges of this State have power to issue writs of mandamus, upon petition, supported by affidavit before a Justice of the Peace, or 'Clerk of the Circuit Court. Section 3568 provides: “the writ is returnable to the Circuit Court of the County in which the land lies, in all cases where land is the subject of controversy; and all other cases, to the Circuit Court of the County where the defendant resides; or if against a public officer, or corporation, in the County in which the office is kept, or corporation does business.”
The Common Law and Chancery Court, of the *8 City of Memphis, is established in the County of Shelby, and has general jurisdiction of all cases at law, of a civil nature, as other Circuit or Chancery Courts of the State; and the Judge elected, and assigned to hold such Court, is vested with the same power of other Circuit Judges, or Chancellors; and under the provision of the Code last referred to, the Court in which the petition was filed, being in the County of Shelby, the Judge of the Common Law and Chancery Court properly exercised jurisdiction of the case.
We are of opinion, from the facts presented in the petition of the relator, the writ of mandamus should have been granted; and his Honor erred in refusing it.
The judgment will be reversed, and the cause remanded, and the writ awarded.